UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THUMBS UP RACE SIX, LLC<br><br>v.<br><br>INDEPENDENT SPECIALTY INSURANCE COMPANY, AND CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY B604510568622021 | Case No. 22-2671<br><br>Judge Barry W. Ashe<br><br>Magistrate Judge Karen Wells Roby |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY OR, ALTERNATIVELY, DISMISS THE PROCEEDINGS**

Defendants Independent Specialty Insurance Company, Certain Underwriters at Lloyds, London and Other Insurers Subscribing to Binding Authority No. B604510568622021 and Independent Specialty Insurance Company (the "Defendants") submit this Memorandum in Support of their Motion to Compel Arbitration and to Stay or, Alternatively, Dismiss the Proceedings, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (commonly known as the New York Convention) and the Federal Arbitration Act.

**I.    INTRODUCTION**

Plaintiff Thumbs Up Race Six, LLC ("Thumbs Up") sued for coverage under an insurance policy that contains an arbitration agreement requiring arbitration of "all matters in dispute…in relation to this insurance." Plaintiff alleged the Insurers breached their insurance contract ("Policy"[1] ) in bad faith. The Plaintiff's claims fall within the scope of the arbitration agreement, and the agreement is enforceable under both Convention on the Recognition and Enforcement of

---

[1] Doc 1-1, Petition for Damages, filed in Civil District Court for the Parish of Orleans and assigned case number 22-05476

Foreign Arbitral Awards ("New York Convention") and the Federal Arbitration Act ("FAA"). Because of this, the Defendants respectfully ask the Court to compel the Plaintiff to arbitrate their claims against the Defendants. The Defendants also ask the Court to stay this suit, as required by 9 U.S.C. § 3, or, alternatively, to dismiss this action.

**II.    BACKGROUND**

Thumbs Up claims that the Defendants failed to pay amounts owed under their insurance policy.[2]  This is a dispute that the policy's Arbitration Agreement requires to be resolved through arbitration.

### A.    The Policy

Thumbs Up sought coverage for property located at 2669 Canal Street, New Orleans, Louisiana 70119 (the "Property").  Independent Specialty Insurance Company and Certain Underwriters at Lloyds, London and Other Insurers Subscribing to Binding Authority UMR B604510568622021 (the "Insurers"), through Velocity Risk Underwriters, offered to insure the Property, subject to certain terms and conditions. Thumbs Up agreed and an insurance contract was issued to Thumbs Up. The contract (i.e., the "Policy") was composed of the coverage part declarations, coverage forms, and endorsements.[3]  The contract was delivered as "surplus lines coverage under the Insurance Code of the State of Louisiana."[4]  Plaintiff's Petition alleges coverage under a commercial property policy numbered 202-802846-02 which had effective dates of May 26, 2021 through May 26, 2022 (the "Policy"), and provided certain coverages for The Property.[5]

---

[2] Doc. 1-1, Petition for Damages

[3] Doc. 1-2, Policy.

[4] *Id*. at General Property Policy Declarations.

[5] Doc. 1-2 Policy.

Notably, one Insurer, RenaissanceRe Corporate Capital (UK) Limited, subscribed to the risk through the Lloyd's of London insurance market.[6]  Briefly, Lloyd's of London is not an insurer.[7] Rather, it is an international insurance market in London, England, that provides the infrastructure for entities to insure a portion of a risk, rather than insuring the entire risk itself. These entities are called "members" or "names."  Each member subscribes to a portion of a policy through administrative entities called "syndicates." Multiple members can subscribe to a policy through a single syndicate. Further, multiple syndicates' members may subscribe to a single policy.[8] Given that multiple members can insure a risk, the members are often identified in lawsuits as "Certain Underwriters at Lloyd's, London Subscribing to [the Policy at Issue]." As of 2015, all members subscribing to risks through the Lloyd's market must be incorporated under the laws of England and Wales.[9]

Here, RenRe UK participated in the risk through the Lloyd's market as the sole member of RenaissanceRe Syndicate 1458.[10] In addition to RenRe UK, RenaissanceRe Specialty U.S. LTD ("RenRe U.S.") subscribed to the Policy through binding agreement B604510568622021.[11] RenRe UK and RenRe US are foreign corporate entities.  Specifically:

---

[6] Doc. 1, Notice of Removal, at ¶¶ 4-7 and accompanying footnotes and exhibits.

[7] *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1083 (11th Cir. 2010).

[8] *Id.*

[9] Lloyd's Market Bulletin Ref. No. Y4728, a true and correct copy attached as Exhibit A.

[10] Doc. 1-2, Policy, at p. 67 (Binding Authority Endorsement).

[11] *Id.*

(a) RenRe UK is a private limited company incorporated under the laws of England and Wales with principal place of business in England and Wales.[12] RenRe Ltd. is a citizen of England and Wales.

(b) RenRe U.S. is a private limited company incorporated under the laws of Bermuda, a territory of England and Wales, with its principal office in Bermuda.

B. **The Arbitration Agreement**

Fundamental to the analysis here, the Policy contains an arbitration provision (i.e., the "Arbitration Agreement"), which makes clear that "all matters in dispute" must be resolved through arbitration. The Arbitration Agreement states:

> H. **Property Loss Conditions**
>
> The following Property Loss Conditions apply:
>
> * * *
>
> 4. **Arbitration Clause**
>
> All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.
>
> Unless the parties agree upon a single disinterested or impartial Arbitrator within thirty (30) days of one party receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his or her disinterested or impartial Arbitrator and give written notice to the Respondent (the party receiving notice of Arbitration). Within thirty (30) days of receiving such notice from the Claimant, the Respondent shall appoint his or her Arbitrator and give written notice to the Claimant.
>
> If the two Arbitrators fail to agree on the selection of the disinterested or impartial umpire within thirty (30) days of the appointment of the second named Arbitrator, each Arbitrator shall submit to the other a list

---

[12] Doc. 1-3, RenaissanceRe Corporate Capital (UK) Limited's Certificate of Incorporation and evidence of its principal place of business.

4

of three Umpire candidates, each Arbitrator shall select one name from the list submitted by the other and the Umpire shall be selected from the two names chosen by a lot drawing procedure to be agreed upon by the Arbitrators. Unless the parties otherwise agree, the Arbitration Tribunal shall consist of disinterested or impartial persons presently or formerly employed or engaged in a senior position in insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders which it may consider proper in the circumstances of the case, regarding pleadings, discovery, inspection of documents, examination of witnesses and any other matter relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall think fit.

All costs of the Arbitration shall be in the discretion of the Arbitration Tribunal who may direct to, and by whom, and in what manner they shall be paid.

Any Arbitration hearing shall take place in Nashville, Tennessee, unless some other locale is agreed by the Arbitrator or Arbitration Tribunal.

The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.

The award of the Arbitration Tribunal shall be in writing and binding. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.[13]

Under the Arbitration Agreement, the parties agreed to arbitrate all disputes, including any dispute regarding arbitrability .[14]

The claims at issue in this lawsuit plainly fall under the Arbitration Agreement. Boiled down, the Plaintiff alleges that the Insurers (collectively, without distinguishing between any of them) failed to pay amounts owed under the Policy.[15] The Insurers dispute that they owe anything.

---

[13] Doc. 1-2, Policy, at 37-38.

[14] *Id.*

[15] Doc. 1-1, Petition for Damages.

This is a "matter in dispute in relation to [the Policy's] insurance" that must be referred to arbitration under the Arbitration Agreement.

## III. LAW AND ARGUMENT

The Arbitration Agreement is enforceable under both the New York Convention and the FAA. As such, the Court should compel arbitration, and this suit should be dismissed, or stayed pending the completion of arbitration.

### A. The Convention and the FAA Reflect a Strong Federal Policy Favoring Arbitration.

There is a strong presumption in favor of enforcing arbitration provisions. Congress codified this presumption in the FAA, mandating that arbitration provisions "shall be valid, irrevocable, and enforceable."[16] The United States Supreme Court has recognized that the FAA declared "a liberal federal policy favoring arbitration agreements."[17]

The federal policy favoring arbitration is even stronger in the international context. In particular, the United States is a party to the New York Convention,[18] which is an international treaty that guarantees citizens of signatory countries the right to enforce arbitration agreements.[19] The Convention's language makes its purpose clear, providing:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to

---

[16] 9 U.S.C. § 2; *see also Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[17] *CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012) (quoting *Moses H. Cone Mem'l. Hosp.*, 460 U.S. at 24).

[18] 21 U.S.T. 2517; UNITED NATIONS COMMISSION ON INTERNATIONAL TRADE LAW, *Status: Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958)*, https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2 (last visited Sept. 15, 2021).

[19] *See* Convention Done at New York June 10, 1958; T.I.A.S. No. 6997 (U.S. Treaty Dec. 29, 1970) ("Convention"); *Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's, London,* CV-18-6192, 2018 WL 4042874 at *3 (E.D. La., August 24, 2018).

        arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

* * *

   3.    The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.[20]

To ensure the Convention was enforceable to its fullest extent, Congress passed Chapter 2 of the FAA to address jurisdictional and venue issues.[21] Along with giving federal courts exclusive jurisdiction over disputes arising under the Convention, Chapter 2 of the FAA reiterates the strong presumption in favor of arbitration, stating that "the [Convention] shall be enforced in United States courts," unless the provision has "no reasonable relation with one or more foreign states."[22]

In part because of the United States' participation in the Convention, the United States Supreme Court has recognized that the already strong policy in favor of arbitration "applies with special force in the field of international commerce."[23] Specifically, the Court has explained that "[]concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context."[24]

---

[20] *Id*.

[21] 9 U.S.C. §§ 201, *et seq*.

[22] *Id.* §§ 201-202.

[23] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

[24] *Id*.

Thus, when reviewing an arbitration provision, the Court should begin with the presumption that it is enforceable. As discussed below, the Arbitration Agreement here is equally enforceable under both the New York Convention and the FAA.

### B. The New York Convention Requires Enforcement of the Arbitration Agreement

First, the New York Convention requires arbitration. The Fifth Circuit has made it clear that, "[t]he 'Convention contemplates a very limited inquiry by the courts.' Resolving the question of whether [an] agreement falls under the Convention will ordinarily prove quick and easy, without requiring too much merits-like investigation by the district court."[25] Specifically, courts generally enforce arbitration provisions under the New York Convention if: (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation, like the United States; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen or the commercial relationship has a reasonable relation to a foreign state.[26] If "these requirements are met, the Convention ***requires*** the district court to order arbitration, 'unless it finds that the said agreement is null and void, inoperative or incapable of being performed.'"[27]

---

[25] *Besser v. Weyler,* 284 F.3d 665, 672 n.7 (5th Cir. 2002) (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co*., 767 F.2d 1140, 1144 (5th Cir.1985)).

[26] *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 712 (5th Cir. 2017); *Woodward Design + Build, LLC v. Certain Underwriters at Lloyd's London*, No. 19-cv-14017, 2020 WL 5793715 (E.D. La. Sept. 29, 2020).

[27] *Johnson v. NCL (Bahamas) Ltd*., 163 F.Supp.3d 338, 353 (E.D. La. 2016) (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir.2004)) (emphasis added). "To hold an apparent arbitration agreement 'null and void' requires evidence of limited situations, such as fraud, mistake, duress, and waiver—applied neutrally on an international scale." *Corpus Christi Island Apartment Villas Mgmt. Grp. LLC v. Underwriters at Lloyd's London*, 2:19-CV-188, 2019 WL 8273959, at *2 (S.D. Tex. Oct. 18, 2019) (citing *Ytech 180 Units Miami Beach Investments LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1267 (S.D. Fla. 2019)).

8

Here, the four requirements are clearly met: (1) The Policy's Arbitration Agreement is a written agreement to arbitrate this dispute; (2) the agreement provides for arbitration in Tennessee, and the United States is a Convention signatory;[28] (3) the agreement arises out of a commercial relationship between Plaintiff and the Defendants; and (4) two of the Defendants – RenRe UK and RenRe U.S. – are not American citizens.[29] Moreover, because RenRe UK is subscribed to the Policy through the Lloyd's market in the United Kingdom, the Arbitration Agreement has a "reasonable relation" to a foreign state.[30] Because the Arbitration Agreement falls under the Convention, the Convention *requires* arbitration of Thumbs Up' claims. Indeed, numerous federal courts have reached this conclusion when considering similar arbitration provisions.[31] In sum,

---

[28] UNITED NATIONS COMMISSION ON INTERNATIONAL TRADE LAW, *Status: Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958)*, https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2 (last visited Sept. 15, 2021).

[29] *See* Doc. 1-3.

[30] Courts within the Fifth Circuit, including this Court, have consistently upheld arbitration provisions in insurance policies that bind members of the Lloyd's insurance market. *See, e.g., Figear v. Velocity Risk Underwriters*, No. 22-cv-01094, 2022 WL 2812980 (E.D. La., July 18, 2022); *Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 20-cv-102, 2021 WL 359735 (M.D. La. Feb. 2, 2021); *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. CV 20-2326, 2020 WL 7342752 (E.D. La. Dec. 14, 2020); *Woodward Design + Build, LLC v. Certain Underwriters at Lloyd's London*, No. 19-cv-14017, 2020 WL 5793715 (E.D. La. Sept. 29, 2020); *Gulledge v. Certain Underwriters at Lloyd's, London*, No. CV 18-6657, 2018 WL 4627387 (E.D. La. Sept. 27, 2018).

[31] *See e.g.*, *See e.g.*, *Figear*, No. 22-cv-01094, 2022 WL 2812980; *Georgetown Home Owners Ass'n,*, No. 20-cv-102, 2021 WL 359735; *1010 Common, LLC*, 2020 WL 7342752; *Woodward Design + Build, LLC*, 2020 WL 5793715; *Urban Meridian Group, Inc. v. Certain Underwriters at Lloyd's, London*, No. 4:19-cv-02405 (S.D. Tex. February 27, 2020); *McDonnel Grp. LLC v. Certain Underwriters at Lloyd's London*, No. 18-cv-2804, 2018 WL 3156034 (E.D. La. June 28, 2018), *aff'd sub nom. McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427 (5th Cir. 2019), as revised (June 6, 2019); *Bhandara Family Living Trust v. Underwriters at Lloyd's, London*, No. H-19-968, 2020 WL 1482559 (S.D. Tex., February 20, 2020); *Sw. LTC - Mgmt. Servs. LLC v. Lexington Ins. Co.*, No. 1:18-CV-00491, 2019 WL 1715832, at *3-4 (E.D. Tex., March 29, 2019); *Port Cargo Serv.*, 2018 WL 4042874 at *6; *YTECH 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London*, 359 F.Supp.3d 1253 (S.D. Fla. 2019); *Corpus Christi Island Apartment Villas Management Group, LLC v. Underwriters at*

because the Arbitration Agreement falls under the New York Convention, the Court should compel arbitration.

      **C.**      **The Arbitration Agreement is Also Enforceable Under the FAA**

Second, the Arbitration Agreement is also enforceable under Chapter 1 of the FAA. As with the Convention, courts generally undertake a limited inquiry when determining whether to refer a matter to arbitration under the FAA. In particular, arbitration should be compelled if :(1) there is a valid agreement to arbitrate under state law, and (2) the dispute falls within the scope of the agreement.[32] That said, if the arbitration agreement includes a delegation clause, like the Arbitration Agreement here, the arbitration panel, not the Court, should decide the second question.[33]

The Arbitration Agreement is a valid agreement to arbitrate under Louisiana law.  In Louisiana, a valid contract requires capacity, consent, a lawful cause, and a valid object.[34] All of these conditions are met here.  In particular, the Insurers offered to provide coverage, subject to certain terms and conditions.  Thumbs Up accepted the offer.  That is a valid contract.

Because the Arbitration Agreement is valid, the Court's inquiry should stop here. This is because the Policy includes a broad delegation clause, which, as discussed further below, requires the arbitration panel to determine the arbitrability of a given dispute under the Arbitration Agreement.  That said, even if this Court were to decide whether the dispute here falls under the Arbitration Agreement, it is clear that it does.  Again, the Arbitration Agreement states "[a]ll

---

*Lloyd's, London*, No. 2:19-cv-188, 2019 WL 8273959 (S.D. Tex., Oct. 18, 2019); *5556 Gasmer Management LLC v. Underwriters at Lloyd's London*, 463 F.Supp.3d 785, 789 (S.D. Tex. 2020).

[32] *Wilhelm v. Thor Motor Coach*, No. 17-1148, 2017 WL 2426007, at *2-3 (E.D. La., June 5, 2017).

[33] *Id*.; *Broussard v. First Tower Loan, LLC*, 150 F. Supp. 3d 709, 724 (E.D. La. 2015).

[34] LA. Civ. Code. Ann. arts. 1918, 1927 1966, 1971.

matters in dispute between you and us (referred to in this policy as "the parties") in relation to this Insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below…" Here, Thumbs Up claims that the Defendants breached the Policy in bad faith and in violation of Louisiana law by failing to pay amounts owed.  This is clearly a dispute that is "in relation to [the Policy's] Insurance," so it falls within the scope of the Arbitration Agreement.

Briefly, the Defendants suspect that Thumbs Up will argue that La. Stat. Ann. § 22:868(A) prevents arbitration under the McCarran-Ferguson Act.  La. Stat. Ann. § 22:868(A) provides that insurance contracts may not deprive Louisiana courts of jurisdiction.  That statute, however, was amended in 2020 to clarify that this provision, Subsection A, does not apply to surplus lines insurers, whose forms are not subject to approval by the Department of Insurance.[35]  For this reason, arbitration is also required under the FAA.

### D. The Arbitration Panel, Not the Court, Must Decide Whether the Arbitration Agreement is Enforceable

As alluded to above, the Arbitration Agreement is enforceable under either the New York Convention or the FAA.  That said, the arbitration panel, rather than this Court, should make this determination.

---

[35] La. Stat. Ann. § 22:868(D); La. Stat. Ann. § 22:868(A) (specifying that surplus lines insurers are not required to file or seek approval of their forms from the Department of Insurance). *Parish of St. Charles v. HDI Global Specialty SE*, No. 22-3404, 2023 WL 141937, at *5 (E.D. La., Jan. 31, 2023) ("Second, although La. R.S. 22:868(A)(2) generally prohibits insurance contracts from including arbitration clauses that deprive Louisiana courts of jurisdiction or venue over any action against an insurer, the statute does not apply to surplus lines insurance policies."); *see also Certain Underwriters at Lloyd's London Severally Subscribing to Certificate No. AMR-7352 v. Belmont Commons, LLC*, No. 2:22-cv-3874, 2023 WL 105337, at *3 (E.D. La., Jan. 4, 2023); *Burk Holding Co. Mt. Hawley Ins. Co.*, No. 22-3503, 2023 WL 183898, at *5 (E.D. La., Jan. 13, 2023); *Brooks & Brooks Investments, LLC v. Mt. Hawley Ins. Co.*, No. 2-CV-03854, 2022 WL 17476969, at *2 (E.D. La., Dec. 6, 2022)

In particular, the parties agreed to a clear and broad arbitration provision that requires "all matters in dispute," including any matters involving the enforceability of the arbitration provision, to be resolved in arbitration. The Supreme Court has held that parties may delegate arbitrability issues to arbitrators.[36] And, the Fifth Circuit has specifically found that the same language used in the Arbitration Agreement is an agreement to arbitrate the "gateway" questions of arbitrability.[37] This applies equally in the insurance context.[38] In fact, in reviewing a nearly identical provision, the Southern District of Texas held that, when arbitration provisions "refer questions of formation and validity to the arbitrators," it includes a delegation clause referring the "gateway question of arbitrability" to the arbitrators.[39] In these scenarios, "only a challenge made to the delegation clause…will prolong the court's analysis."[40]

Thus, even if Plaintiff were to argue that one of the narrow exceptions to arbitration bars the Arbitration Agreement's application here, which it does not, that decision must be made by the arbitration panel.

---

[36] *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

[37] *See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985) ("it is difficult to imagine broader language than that contained in the [agreement's] arbitration clause, 'any dispute….'").

[38] *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669 (5th Cir. 1994); *Acosta v. Master Maintenance & Const., Inc.*, 452 F.3d 373, 378-379 (5th Cir. 2006); *O'Connor v. Maritime Management Corp.*, No. 16-16201, 2017 WL 1018586, at *2 (E.D. La. 2017); *Authement v. Ingram Barge Co.*, 878 F.Supp.2d 672, 677 (E.D. La. 2012); *Viator v. Dauterive Contractors, Inc.*, 638 F.Supp.2d 641, 648 (E.D. La. 2009).

[39] *Corpus Christi Island*, 2019 WL 8273959 at *3; *Port Cargo Serv.*, 2018 WL 4042874, at *4–5; *5556 Gesmer Management*, 463 F.Supp. 3d at 790.

[40] *Corpus Christi Island*, 2019 WL 8273959 at *3.

### E. A Stay of All Issues Referable to Arbitration is Mandatory

Finally, this matter should be stayed while the arbitration is pending. Specifically, under 9 U.S.C. § 3, which applies in Convention cases under 9 U.S.C. §§ 206 and 208, a federal district court must stay litigation if a party demonstrates that there is an arbitration agreement that governs the dispute. It provides:

> If any suit . . . be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which said suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had . . . .[41]

As discussed above, this dispute must be resolved in arbitration. Thus, the mandatory stay provision applies.[42] If the Court would prefer, it may also dismiss this action because all the claims are arbitrable.[43]

### IV. CONCLUSION

Thumbs Up seeks coverage under an insurance policy that contains an agreement requiring arbitration of this dispute. Because the arbitration agreement is enforceable under both the New York Convention and the FAA, the Defendants respectfully request that the Court compel Thumbs Up to arbitrate its claims. The Defendants also request that the Court stay these proceedings pending arbitration or, in the alternative, dismiss these proceedings in favor or arbitration.

---

[41] 9 U.S.C. § 3 (emphasis added).

[42] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

[43] *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86-87 (2000); *Alford*, 975 F.2d at 1164 (stating that the court may not deny a stay when arbitration is properly invoked, but, the weight of authority also supports dismissal of the case when all of the issues raised in the court must be submitted to arbitration).

Respectfully submitted,

**WOOD, SMITH, HENNING & BERMAN LLP**

  /s/ Lori D. Barker
Lori D. Barker (La. Bar No. 31687)
1100 Poydras Street, Suite 2900
New Orleans, Louisiana 70163
Phone: (504) 386-9840
Fax:     (504) 386-9841
Email:    LBarker@wshblaw.com

*Counsel for Defendants*