UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THUMBS UP RACE SIX, LLC | CIVIL ACTION |
| VERSUS | NO. 22-2671 |
| INDEPENDENT SPECIALTY INSURANCE COMPANY, *et al.* | SECTION M (4) |

**ORDER & REASONS**

Before the Court is a motion to compel arbitration and dismiss or stay the litigation filed by defendants Independent Specialty Insurance Company ("ISIC") and Certain Underwriters at Lloyd's and other insurers subscribing to binding authority no. B604510568622021 ("Certain Underwriters") (collectively, "Defendants").[1] Plaintiff Thumbs Up Race Six, LLC ("Plaintiff") responds in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting Defendants' motion and staying this litigation while the parties pursue arbitration.[3]

**I.   BACKGROUND**

This case arises from an insurance coverage dispute following Hurricane Ida, which made landfall on August 29, 2021. Plaintiff maintains surplus lines insurance with Defendants who jointly subscribe to the coverages, terms, and conditions set forth in the insurance policy no. 2020-802846-02 (the "insurance policy").[4] Plaintiff made claims with Defendants after its insured property was damaged by the storm.[5] On June 22, 2022, Plaintiff filed this suit against Defendants

---

[1] R. Doc. 22.
[2] R. Doc. 23.
[3] In *Bopp v. Independent Specialty Insurance Co.*, --- F. Supp. 3d ---, 2023 WL 2185412 (E.D. La. Feb. 23, 2023), this Court considered the same arbitration clause in the same Lloyd's binding authority no. B604510568622021 and granted the defendants' motion to compel arbitration.
[4] R. Doc. 1-2 at 2.
[5] R. Doc. 1-1 at 1-2.

1

in state court seeking insurance proceeds and asserting that the insurers acted in bad faith with respect to their joint adjustment of the loss.[6] Defendants removed the suit based on federal question subject-matter jurisdiction under 28 U.S.C. § 1331.[7] Defendants assert that there is a valid arbitration agreement in the insurance policy to which they both subscribe that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, because one of the insurers – Certain Underwriters (through RenaissanceRe Corporate Capital (UK) Limited and RenaissanceRe Specialty U.S. LTD) – is a foreign citizen, thus giving this Court original jurisdiction pursuant to 9 U.S.C. §§ 202, 203, and 205.[8]

The insurance policy to which Defendants subscribe (*i.e.*, the governing document for each of the underlying insurance policies) contains the following arbitration clause:

> All matters in dispute between you and us … in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.
>
> ….
>
> Any Arbitration hearing shall take place in Nashville, Tennessee, unless some other locale is agreed by the Arbitrator or Arbitration Tribunal.
>
> The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.[9]

---

[6] *Id.* at 1-8.

[7] R. Doc. 1 at 1, 5.

[8] *Id.* at 1-10. Section 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States," which gives federal district courts original jurisdiction over such actions. 9 U.S.C. § 203. Section 205 makes removable an action pending in state court that "relates to an arbitration agreement or award falling under the Convention." *Id.* § 205. Although the statute does not define when an action "relates to" an agreement or award falling under the Convention, "federal courts have recognized that the plain and expansive language of the removal statute embodies Congress's desire to provide the federal courts with broad jurisdiction over Convention Act cases in order to ensure reciprocal treatment of arbitration agreements by cosignatories of the Convention." *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 376 (5th Cir. 2006).

[9] R. Docs. 1-2 at 37-38.

**II.   PENDING MOTION**

Defendants seek to compel arbitration and stay the litigation, arguing that, because Certain Underwriters is a foreign citizen, the Convention applies and the criteria for compelling arbitration are satisfied.[10] Defendants also argue that the arbitration panel, not the court, must decide whether the arbitration agreement is enforceable.[11]

In opposition, Plaintiff argues that the arbitration clause is invalid because it is adhesionary.[12] Plaintiff also argues that the Convention should not apply because the domestic insurer (ISIC) has a higher percentage of participation in the policy than the foreign insurer (Certain Underwriters) and, consequently, Louisiana law reverse-preempts the Convention, meaning that Plaintiff's claims against ISIC are not subject to arbitration.[13] Finally, Plaintiff argues that the insurance policy contains ambiguities concerning jurisdiction that should be construed in Plaintiff's favor to deny the motion to compel arbitration.[14]

**III.   LAW & ANALYSIS**

There is a strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 24-25 (1983). The Convention is an international treaty that provides citizens of the signatory countries with the right to enforce arbitration agreements. The purpose of the Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."[15] *Sherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). The Federal Arbitration Act (the "FAA"), 9

---

[10] R. Doc. 22-1 at 1-11.
[11] *Id.* at 11-12.
[12] R. Doc. 23 at 5-10.
[13] *Id.* at 10.
[14] *Id.* at 11.
[15] It is undisputed that the United States (Plaintiff and ISIC) and the United Kingdom (Certain Underwriters) are signatories to the Convention.

U.S.C. §§ 201-208, codifies the Convention and provides for its enforcement in United States courts. *See id.* § 201 ("The Convention … shall be enforced in United States courts in accordance with this chapter."); *see also id.* § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). The Fifth Circuit has held that "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id.* (quotation omitted). Once these factors have been found to exist in a given case, a district court must order arbitration "unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed." *Id.* (quotation omitted).

All four factors are satisfied in this case. The insurance policy contains a written arbitration agreement that provides for arbitration in the United States and arises out of a commercial legal relationship (namely, a contract of insurance). Further, as Plaintiff concedes,[16] one party to the policy – Certain Underwriters – is not an American citizen. Nonetheless, Plaintiff argues that its claims should not be subject to arbitration because the domestic insurer – ISIC – subscribes to a higher percentage of the policy than does Certain Underwriters.[17] This Court and others in this district have held that equitable estoppel prevents a plaintiff from objecting to arbitration with a domestic insurer when the claims against all defendants, foreign and domestic, are inextricably

---

[16] R. Doc. 23 at 10.
[17] *Id.*

4

intertwined – that is, when a plaintiff has alleged substantially interdependent and concerted misconduct (as here with respect to improper claims handling)[18] on the part of both the domestic insurer (here, ISIC, the nonsignatory to the contract containing the enforceable arbitration clause) and the foreign insurer (here, Certain Underwriters, the signatory). *Par. of St. Charles v. HDI Glob. Specialty SE*, 2023 WL 1419937, at *4 (E.D. La. Jan. 31, 2023) (discussing and applying *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC,* 140 S. Ct. 1637, 1645 (2020) (observing that "nothing in the text of the Convention could be read to otherwise prohibit the application of domestic equitable estoppel doctrines" that permit the enforcement of arbitration agreements by nonsignatories); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (holding that "equitable estoppel is warranted when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both nonsignator[ies] and one or more of the signatories to the contract"); *Acad. of the Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, 2023 WL 246832, at *3-5 (E.D. La. Jan. 18, 2023) (applying *Grigson* to hold that equitable estoppel compels the arbitration of claims made without differentiation among the insurer defendants alleged to have acted interdependently and in concert in the adjustment and evaluation of plaintiff's insurance claims); *Kronlage Family Ltd. P'ship v. Indep. Specialty Ins. Co.*, 2023 WL 246847, at *6 (E.D. La. Jan 17, 2023) (applying equitable estoppel to compel arbitration when plaintiff did not differentiate between conduct of foreign and domestic insurers); *City of Kenner v. Certain Underwriters at Lloyd's London*, 2022 WL 16961130, at *3 (E.D. La. Nov. 16, 2022) ("*City of Kenner II*") (applying *Grigson* to hold that equitable estoppel compels the arbitration of claims made "without differentiation among the insurer defendants" alleged to "have acted

---

[18] R. Doc. 1-1 at 3-6.

interdependently and in concert in the adjustment and evaluation of plaintiff's insurance claims"); *City of Kenner v. Certain Underwriters at Lloyd's, London*, 2022 WL 307295, at *3 (E.D. La. Feb. 2, 2022) ("*City of Kenner I*") (applying *Grigson* to hold that equitable estoppel was warranted to compel arbitration when the plaintiff alleged that defendants collectively insured the property and, without differentiation, received proof of loss but failed to pay out on the damage in bad faith); *Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*, 2018 WL 4042874, at *7 (E.D. La. Aug. 24, 2018) (applying *Grigson* to hold that equitable estoppel applied to compel arbitration when claims against foreign and domestic insurers were intertwined since "[a]llowing plaintiffs to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration")). Hence, this Court must order arbitration unless it finds that the arbitration agreement in the insurance policy is null and void, inoperative, or incapable of being performed.

Plaintiff argues that Louisiana's prohibition against arbitration clauses in insurance policies precludes enforcement of the clause in this case.[19]  This argument is unavailing for two reasons. First, "Louisiana courts have likewise adopted *Grigson*'s holding," notwithstanding the supposed prohibition. *Acad. of the Sacred Heart*, 2023 WL 246832, at *3 n.19 (quoting *City of Kenner II*'s holding to this effect and citing, by way of example, the state-court decision in *Sturdy Built Homes, L.L.C. v. Carl E. Woodward L.L.C.,* 82 So. 3d 473, 478 (La. App. 2011)). Second, although La. R.S. 22:868(A)(2) generally prohibits insurance contracts from including arbitration clauses that deprive Louisiana courts of jurisdiction or venue over any action against an insurer, the statute does not apply to surplus lines insurance policies. *Certain Underwriters at Lloyd's, London v.*

---

[19] R. Doc. 23 at 10 (citing La. R.S. 22:868).

*Belmont Commons L.L.C.*, 2023 WL 105337, at *3 (E.D. La. Jan. 3, 2023) (citing La. R.S. 22:868(D) and :446(a) and applying equitable estoppel under *Grigson*). Because this case involves surplus lines insurance, the statutory prohibition against arbitration does not apply.

Without citing any evidence apart from the insurance policy itself, Plaintiff argues that the arbitration clause is adhesionary and, thus, unenforceable, because it was embedded in the contract of insurance and Plaintiff did not have equal bargaining power.[20] Under Louisiana law, courts apply the following factors to determine whether an arbitration agreement is adhesionary: (1) the physical characteristics of the clause, including font size; (2) the distinguishing features of the clause; (3) the mutuality of the clause, in terms of the relative burdens and advantages; and (4) the relative bargaining strength of the parties.[21] *Aguillard v. Auction Mgmt. Corp.*, 908 So. 2d 1, 9 (La. 2005). Analyzing these factors, other Louisiana federal courts have found that similar arbitration clauses in insurance contracts were not adhesionary. *See Tra-Dor Inc. v. Underwriters at Lloyds London*, 2022 WL 3148980, at *4 (W.D. La. July 25, 2022); *Glad Tidings Assembly of God Church of Lake Charles v. Indian Harbor Ins. Co.*, 2021 WL 2676963, at *2-3 (W.D. La. June 28, 2021); *Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, 2021 WL 359735, at *12-13 (M.D. La. Feb. 2, 2021). As in these cases, the arbitration clause at issue here is not adhesionary under the *Aguillard* factors. The clause is conspicuous, appearing on pages 27 and 28 of a 39-page "Small Commercial Property Form" constituting a principal part of the insurance policy.[22] It is clearly labeled with the header "Arbitration Clause" in bold print, set off from text, and the body of the provision is in clear, legible font that is the

---

[20] *Id.* at 3-4, 6-9.
[21] A federal court sitting in diversity applies the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[22] R. Doc. 1-2 at 37-38.

7

same, standard size as the rest of the surrounding provisions.[23] The arbitration clause is mutual, providing that "all matters in dispute" will be subject to arbitration and does not reserve to the insurer remedies that are unavailable to the insured.[24] And, as in the other similar cases, Plaintiff has not demonstrated that it did not have adequate bargaining strength or the capacity to read and understand the policy terms before agreeing to them. Plaintiff here had a choice when procuring insurance. It could have walked away from a surplus lines policy containing an arbitration clause. "In Louisiana, a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Georgetown Homes Owners Ass'n,* 2021 WL 359735, at *13 (quoting *Aguillard*, 908 So. 2d at 17). Accordingly, none of the *Aguillard* factors supports finding the arbitration clause to be adhesionary and unenforceable.

Finally, Plaintiff argues that the arbitration clause should not be enforced because the insurance policy contains "ambiguities and conflicts" that must be construed in its favor. Plaintiff first cites a provision that states the policy is "delivered as a surplus line coverage under the Insurance Code of the State of Louisiana."[25] This statement, per La. R.S. 22:433, is required to be printed verbatim in all surplus lines policies issued in Louisiana, and this formality "does not establish Louisiana law as the governing law of construction of the contract." *City of Kenner I*, 2022 WL 307295, at *3. Thus, the statement creates no ambiguity or conflict. Next, Plaintiff argues that the policy's jurisdictional clause under which Defendants "agree to submit to the jurisdiction of any court of competent jurisdiction within the United States of America … in which a suit for these amounts may be brought" is irreconcilable with the arbitration clause, making the

---

[23] *Id.*
[24] *Id.*
[25] R. Doc. 23 at 11 (quoting R. Doc. 1-2 at 2).

later unenforceable.[26]  This Court sees no such conflict.  In *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1205 (5th Cir. 1991), the Fifth Circuit held that these types of clauses can be reconciled by interpreting the jurisdictional clause consistent with the arbitration clause to provide a judicial forum for disputes concerning the enforcement of arbitration awards.  This interpretation gives force and effect to both clauses.

In sum, under the Convention and the equitable estoppel doctrine, an order compelling arbitration of this matter is appropriate, and section 3 of the FAA mandates that the Court "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Accordingly, the Court compels arbitration, stays the case pending arbitration, and declines the Defendants' alternative request to dismiss Plaintiff's claims at this time.

### IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to compel arbitration and stay litigation (R. Doc. 22) is GRANTED.

IT IS FURTHER ORDERED that this matter is STAYED and ADMINISTRATIVELY CLOSED while the parties pursue arbitration.  Any party may move to reopen these proceedings, if necessary, once arbitration is complete.

New Orleans, Louisiana, this 28th day of June, 2023.

                                                        BARRY W. ASHE
                                                       UNITED STATES DISTRICT JUDGE

---

[26] *Id.* (quoting R. Doc. 1-2 at 69).